UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-20050-CR-ALTONAGA

UNITED STATES OF AMERICA

    **Plaintiff,**

vs.

**BEKENVAWER AGUILAR-HURTADO,
DANIEL QUINTERO**

    **Defendant.**
_____/

## DEFENDANTS' JOINT MOTION TO DISMISS INDICTMENT

COMES NOW, the Defendants, **BEKENVAWER AGUILAR-HURTADO AND DANIEL QUINTERO** by and through undersigned counsel, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and files this Motion to dismiss the Indictment. In support thereof, the defense states as follows:

## PROCEDURAL HISTORY

1) On February 15, 2022, the government filed an indictment where it charged in Count 1: Conspiracy to possess with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States in violation of Title 46, United States Code, Section 70506(b) and Count 2: Possession with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States in violation of Title 46, United States Code, Section 70503(a)(1). D.E. 1.

1

2) The Order setting Trial Date as to Mr. Aguilar-Hurtado set the trial date for the two-week period beginning April 11, 2022. D.E. 14.

3) On March 29, 2022, undersigned counsel filed an Unopposed Motion to Continue Trial and Calendar Call. D.E. 22.

4) On March 29, 2022, the Court granted the Motion to Continue Trial to June 6, 2022, with pre-trial motions due May 3, 2022. D.E. 24.

5) The discovery provided by the government in the instant case indicates the following: (a) when initially boarded by the United States Coast Guard the defendants made a claim of Colombian nationality for the vessel; (b) the Colombian government was then contacted by the United States; (c) the Colombian government could neither confirm nor deny registration for the vessel; and (d) the United States then treated the vessel as one without nationality and subject to the jurisdiction of the United States.

6) Recently, undersigned counsel learned that the First Circuit had held that 46 U.S.C. § 70502(d)(1)(C) is facially unconstitutional because it plainly applies to vessels that are not "stateless" under customary international law and therefore exceeds Congress's authority under Article I, Section 8, Clause 10 (the Felonies Clause). *See, United States v. Davila-Reyes*, 23 F.4th 153, 2022 WL 178854 (1st Cir. 2022).

## ARGUMENT

In order to effectively represent Mr. Aguilar-Hurtado and protect his constitutional rights, defense counsel has a duty to litigate jurisdictional issues in

reference to the above-cited *Davila-Reyes* case. *Id.*

In that connection, the government relies on the same unconstitutional provision of the MDLEA to establish statutory jurisdiction against Mr. Aguilar-Hurtado as the government relied upon in *Davila-Reyes*. Accordingly, the Court (under the First Circuit's analysis) lacks constitutional subject matter jurisdiction, and the indictment against Mr. Aguilar-Hurtado should be dismissed. Challenges to subject matter jurisdiction are never waived and may be raised at any stage of the proceeding. *United States v. Iguaran*, 821 F.3d 1335 (11th Cir.2016).

As the Court is aware, Mr. Aguilar-Hurtado is charged with conspiracy to possess with intent to distribute cocaine on board a "vessel subject to the jurisdiction of the United States," in violation of 46 U.S.C. § 70503(a)(1) and 70506(b). The phrase "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality." 46 U.S.C. § 70502(c)(1)(A). The MDLEA defines "vessel without nationality" to include, as relevant here, any vessel "aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C). When it enacted this provision of the MDLEA, Congress exceeded the authority granted to it by the Felonies Clause because § 70502(d)(1)(C) plainly applies to individuals on vessels that are *not* considered stateless under customary international law. *See Davila-Reyes*, 2022 WL 178854, at *31.

Congress enacted the relevant portions of the MDLEA solely pursuant to its enumerated grant of authority to "define and punish . . . Felonies committed on the high Seas" (*i.e.* the "Felonies Clause" of Article I, Section 8, Clause 10).[1] (*See* DE 31:3–4 (citing *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1258 (11th Cir. 2012) and *United States v. Davila-Mendoza*, 972 F.3d 1264 (11th Cir. 2020))); *see also United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016); *Davila-Reyes*, 2022 WL 178854, at *11.

Furthermore, the Constitutional Framers incorporated customary international law as a limit on Congress's authority under the Felonies Clause. (*See* DE 31:4–5 (citing *Bellaizac-Hurtado*, 700 F.3d at 1248–49)). In *Davila-Reyes*, the First Circuit undertook an exceptionally thorough and persuasive review of the historical record (including the Framers' own statements) and legal precedent, which confirmed the same. *See Davila-Reyes*, 2022 WL 178854. at *14–24. As a general matter, the Framers were deeply committed to international law and saw, as their "primary goal," "improving the new nation's ability to meet its obligations to other countries under international law." *Id.* at *15; *see also id.* at *16 (explaining that, for both pragmatic and ideological reasons, "as they embarked on drafting a constitution, the Framers saw a federal system capable of upholding international law as an imperative for the United States to achieve equal status in the community of

---

[1] Undersigned refers to the entirety of Article I, Section 8, Clause 10 as the "Define and Punish Clause" and the portion of the Define and Punish Clause that authorizes Congress to "define and punish . . . Felonies committed on the high Seas" as the Felonies Clause.

nations."). Consistent with these goals and concerns, "the Framers viewed international law as a restraint on Congress's enumerated powers bearing on foreign relations." *Id.* at *16.

This is particularly evident in Article I, Section 8, Clause 10 (the Define and Punish Clause). The Define and Punish Clause is made up of phrases borrowed from international law—"Offences against the Law of Nations," "Piracies," and "Felonies" are "all concepts taken directly from international law." *Id.* These phrases were "familiar shorthand" for "international law concepts" and their inclusion in the Constitution is "strong evidence that the Framers intended the Define and Punish clause to align with the international law understanding of those concepts." *Id.*

The Framers' decision to treat "Piracies" and "Felonies" distinctly within the Define and Punish Clause is also significant. At the time, and consistent with international law, piracy was understood to be a crime of universal jurisdiction, meaning it could be punished by any country no matter where it was committed or by whom. *Id.* at *18–19. Felonies—serious crimes other than piracy—were not—even if committed on the high seas. "It was a well-accepted principle of international law that countries could enact statutes criminalizing conduct on the high seas other than piracy, *but only* as to a given country's own nationals or *on vessels over which the country could exercise jurisdiction pursuant to international law*." *Id.* at 19 (emphases added) (citing numerous primary and secondary sources). Thus, by separating "Piracies" and "Felonies" in the Define and Punish Clause, the Framers "manifest[ed] an intent to distinguish between crimes with different jurisdictional limits under

5

international law: classic piracy, which can be punished no matter where committed or by whom, and Felonies, which can be punished only if committed by U.S. nationals or on vessels subject to U.S. jurisdiction under international law" while on the high seas. *Id.* (footnote omitted); *see also United States v. Palmer*, 16 U.S. (3 Wheat.) 610, 630–34 (1818) (holding that Congress could not extend U.S. jurisdiction to foreigners on foreign vessels for the common law form of robbery); *United States v. Furlong*, 18 U.S. (5 Wheat.) 184, 197–98 (1820) (holding the same for murder on a foreign vessel, and again contrasting piracy, which can be punished by Congress "even when committed by a foreigner upon a foreigner in a foreign ship").

In sum: Congress's authority to "define and punish . . . Felonies committed on the high Seas" goes only as far as international law permits. International law prohibits "any country from asserting jurisdiction over foreign vessels on the high seas[.]" *Davila-Reyes*, 2022 WL 178854, at *20 (citation and internal quotation marks omitted). Thus, the United States can only exercise jurisdiction over vessels on the high seas that are considered stateless (*i.e.* without nationality) *under international law*. *Id.* Put differently:

> there can be no doubt that the Constitution's drafters intended that Congress's authority under [the Felonies Clause] be constrained by currently applicable international law whenever Congress invokes that Clause to assert its authority over foreign nationals and their vessels on the high seas. . . . [T]hat constraint [necessarily] applies when Congress passes legislation deeming vessels on the high seas stateless. . . . It therefore follows that the Felonies Clause requires Congress to abide by international law principles in defining statelessness.

*Id.* at *22.

Customary international law considers as stateless a vessel that has not been granted nationality by any country. *See id.* at *22. A vessel may be deemed stateless under international law if it has never been granted nationality by any state, has had its nationality/authorization cancelled, refuses to claim any nationality, or claims more than one nationality. *See id.* at 22–23. A verbal claim of nationality by the master or individual in charge constitutes prima facie proof of the vessel's nationality. *Id.* at *24; *see also United States v. Obando*, 891 F.3d 929, 939 (11th Cir. 2018) (Black, J. concurring).

Section 70502(d)(1)(C) allows the United States to deem vessels stateless (*i.e.* without nationality) when they would not be deemed stateless under international law, namely, when the master or individual in charge makes a claim of nationality, which is neither confirmed nor denied by the identified nation. In other words, "§ 70502(d)(1)(C) displaces the prima facie showing of nationality that arises from an oral assertion of nationality or registry"—a method recognized by both the MDLEA and international law—"without any affirmative evidence to the contrary." *Davila-Reyes*, 2022 WL 178854, at *24 (citations omitted).

Because the MDLEA treats as stateless a vessel that, under international law, would be a vessel with nationality, "the prosecution of foreign nationals traveling on such a vessel for a violation of U.S. law is impermissible under the Felonies Clause of the Constitution, the only source of authority for Congress's adoption of the MDLEA." *Id.* at *31. And because this "constitutional flaw" is "evident in the statutory terms themselves," § 70502(d)(1)(C) is facially unconstitutional. *Id.* at *30

7

n.61 (explicitly holding that the entire provision is facially unconstitutional and rejecting the government's characterization of the appellants' challenge as an "as-applied" challenge).

As the *Davila-Reyes* Court explained, this issue was one of "first impression for the federal courts." *Id.* at *14. It, therefore, remains an open question in the Eleventh Circuit. In *United States v. Lopez Hernandez*, the Eleventh Circuit was tasked with determining whether the government had established *statutory* jurisdiction under § 70502(d)(1)(C) where the vessel at issue was, in fact, registered in Guatemala, but—when contacted—the government of Guatemala replied that it could neither confirm nor deny the claim of nationality. 864 F.3d 1292, 1297–99 (11th Cir. 2017). The *Lopez Hernandez* defendants argued on appeal that the government had not established that the vessel was without nationality, and therefore had not established statutory jurisdiction pursuant to § 70502(d)(1)(C), because the vessel was *not* actually stateless, and because the Coast Guard had information that would have enabled it to easily confirm the registry, but it failed to do so in bad faith. *Id.* at 1299. The panel rejected this claim, reasoning that statutory jurisdiction under § 70502(d)(1)(C) does not depend on actual statelessness, but rather on the foreign government's response. *Id.* at 1299.[2]

---

[2] The panel also rejected the defendants' argument that the prosecution violated international law, reasoning that, statutorily, any such violation fell to the executive branch and was not a basis to undo a criminal conviction. *Id.* at 1297. To be clear, Mr. Aguilar-Hurtado is not making this argument (that international law itself constrains Congress's authority to enact statutes). Rather, he argues—as the First Circuit held—that Congress's authority to "define and punish . . . Felonies on the high seas" is constrained by customary international law because "the Felonies

8

Critically, the *Lopez Hernandez* "defendants did not make the argument asserted [in *Davila-Reyes*]," and before this Court, "that "§ 70502(d)(1)(C) is *unconstitutional* because Congress acted beyond its authority under the Felonies Clause in defining a vessel without nationality to include a vessel whose master makes a verbal claim of nationality that is not affirmatively and unequivocally confirmed by the identified country." *Davila-Reyes*, 2022 WL 178854, at *27 n.53 (emphasis added). In other words, the defendants never argued, and the panel never considered, whether Congress's authority to "define and punish . . . Felonies on the high seas" is constrained by customary international law because the Felonies Clause itself, "*by original design*, requires Congress to adhere to the jurisdictional limits of international law with respect to determining statelessness." *Id.* at *14 (emphasis added).

Simply put, the constitutional issue present here and in *Davila-Reyes* was plainly not before the Eleventh Circuit in *Lopez-Hernandez* and, as a result, the panel did not address it. As the Eleventh Circuit has "explained time and again: '[A] decision can hold nothing beyond the facts of that case.'" *United States v. Birge*, 830 F.3d 1229, 1232 (11th Cir. 2016) (citation omitted). Because "the Eleventh Circuit was not "confronted with the question [this Court] face[s] today . . . . [it] of course had

---

Clause of the Constitution, by original design, requires Congress to adhere to the jurisdictional limits of international law with respect to determining statelessness." *Davila-Reyes*, 2022 WL 178854, at *14. In other words, § 70502(d)(1)(C) is not unconstitutional because it violates international law, it is unconstitutional because it violates *the Felonies Clause*, which "requires Congress to abide by international law principles in defining statelessness." *Id.* at *22. That issue was never before the *Lopez Hernandez* court and, as a result, *Lopez Hernandez* is entirely inapposite.

9

no occasion to resolve it." *United States v. Edwards*, 304 F.3d 1088, 1112 (11th Cir. 2021) (citing *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004), for the proposition that "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been decided as to constitute precedents.") (further citation omitted).

In the absence of relevant Eleventh Circuit precedent, this Court should follow the persuasive, thorough, and well-reasoned holding of the First Circuit in *Davila-Reyes* and dismiss the indictment here. *Id.*

The government opposes this motion.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By: s/ *Daniel L. Ecarius*
    Daniel L. Ecarius
    Assistant Federal Public Defender
    Florida Bar No. 719765
    150 W. Flagler Street, Suite 1700
    Miami, FL 33l30-1556
    Telephone: (305) 530-7000
    E-mail: daniel_ecarius@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on April 8, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Daniel Ecarius*